The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, be seated. All right, we have one case today, United States v. Saldana. Mr. Cooper, when you're ready. Good morning. This is the case of United States v. Martin Saldana. Mr. Saldana was tried in March of 2014 for methamphetamine conspiracy. In possession of a sawed-off shotgun. He was convicted of the conspiracy in the shotgun. He was acquitted of a 924C count and two counts of possession of firearms by prohibited persons were dismissed by the government prior to trial. The issues briefed and presented to the court had to deal, number one, with the sufficiency of evidence presented at trial when the trial court or trial judge denied Mr. Saldana's attorney's rule 29 motion. And then the second issue relates to the reasonableness procedurally and substantively to the life sentence imposed on Mr. Saldana upon his conviction by the jury. Not making light of the sufficiency argument, but I would like to proceed first with the reasonableness argument and go to the stated purpose of the sentencing guidelines in section 3553A, which is for the government or for the court to impose a sentence which is sufficient but not greater than necessary in formulating a sentence sufficient under the totality of the circumstances of the particular case. Mr. Cooper, I've been doing this trial and appellate now, I guess, for 21 years, almost 22 years, and I'm not sure I have ever seen a criminal history one life sentence. That's my point, Your Honor. Exactly. So I take it this is one of those instances where, I guess, for one reason or another, the government said, you either give up your cooperators, you cooperate in some form or fashion, or you're going away forever if we convict you. I'm not asking you to get into plea negotiations. I wasn't involved at that stage, and I think Your Honor's inference is well taken under the facts of this case. I mean, Mr. Saldana, even by the government's admission in this case, by all the facts that have been presented, didn't begin the alleged criminal activity until he was 40 years old. If you look at his prior criminal history to that day, he had a lot of traffic offenses, and there were some misdemeanor assault charges back in the early 90s, and then there was a charge in 2011. But there were no drug offenses, there were no BNEs, no felonious assault activities taken by his part. So, relatively speaking, he was a relatively law-abiding citizen, and certainly not one who would have had a criminal history sufficient to call for a life sentence. Well, what evidence in the record did he present to rebut the presumption of the sentence being substantive and reasonable since it was within the guideline? He presented several factors. Number one was the extreme likelihood of victimization of Mr. Saldana based on his cultural heritage, based on his physique, based on scars and gunshot wounds that he had. He also presented community ties, and he based his health history, which included hypertension, difficulties walking. And those were the factors presented to the trial judge in an effort to ameliorate or mitigate the sentence or a downward departure, moving forward downward departure. But I would contend that the case law states that you look at the totality of the circumstances, and the totality of the circumstances I still contend was that for most of Mr. Saldana's adult life, he had not been engaged in this type of nefarious activity. And when the sentencing commission set the guidelines up, and you talk about getting a life sentence on the level 43, generally you're not talking about somebody who didn't begin their criminal enterprise when they're 40 years old, and had only been involved in it for five years. And then all of a sudden that five years, you're not getting 40 more years, you're not getting 30 more years, you're getting life, and life means life. So I think that when you look at the overall totality of the circumstances, that's how this sentence becomes unreasonable. And I know that the court looked at the arguments made by Mr. Saldana's attorney, and he went through each one and he said, well, extraordinary risk of victimization, prison is what prison is, you're not going to be any different than anybody else. Yes, he is. He's going to prison for the first time at age 45. He's an old man under any stretch of the imagination in prison. Scars and gunshot wounds, well, they could be a sign of toughness as much as they make you vulnerable. Again, on a 45-year-old? A 45-year-old doesn't have mobility that a 20-something-year-old has. And we know Mr. Saldana doesn't have the mobility because the PSR notes that the day before his premises were searched and he was arrested, the law enforcement had sent somebody to talk to him and make an undercover buy from him, and he was walking around with the assistance of a walker at that time.  Turn on any TV set on any given day and you can watch episode after episode of the dangerousness. We deal with the effects of prison life every day in this courtroom and others throughout the country. And again, you know, his health issues, hypertension, the difficulties caused by his lifetime of living. But you don't, well, I guess the question I have is do you have a compelling procedural unreasonableness argument? Procedurally, I would say, I'd say the best argument is substitute, but I would say that procedurally, that although the court recited what the government had argued as to each point that I named, I don't think that that's sufficient under the totality of the circumstances that are required to set forth in Rita and Golf. I think that you have to address all of the circumstances, and I realize that the courts have set an individualized assessment of each case so that we can tell that the court has adequately taken into account the arguments of the parties. And I think that saying that anybody who goes to prison faces these same kinds of issues and these same kinds of dangers, I don't know that that's an individualized assessment. I think in Mr. Saldana's case, it did make a difference that he was of small stature and frame, that he had health issues, that he had difficulties walking, that he did have the issue of scarring and evidence of gunshot wounds. And given his age, there is a difference in what that makes on him as opposed to what it might for a younger inmate, a much younger inmate as most inmates would be under those circumstances. So I don't think the court adequately, procedurally, adequately addressed those issues in formulating his sentence. And that's why I make the procedural argument, because I don't think that there was an adequate individualized assessment of the arguments made by Mr. Saldana's counsel, not only in sentencing, but in his memorandum for appropriate sentence that he filed with the court prior to sentencing. Counsel, you had originally, the drug attribution had been challenged, is that right? Yes, there were a number of objections made, yes. And then those objections were dropped? And those objections were withdrawn. And I would contend that if you look at the deal made by the government and the defense prior to sentencing, we will agree not to pursue some of the enhancements in light of you withdrawing your objections, to me indicates that the government was really not opposed to a sentence of something less than life. Remind us what the government asked for. They asked for life. They asked for life. Yes. So how do you reconcile that with what you just said? I understand that, Your Honor. And sometimes they say, well, you know, we're going to ask for life, but if the judge gives something less than life, then, you know, we're going to. That happens. Yeah, that happens. I'm not that familiar with this. I don't understand the deal. So what did the defendant get out of this deal? He dropped his objections to drug attribution and other. As a practical matter, he was going to get a level 43 total offense level no matter what, because that's what the guidelines provide. But he had a number of enhancements dismissed relating, and I don't have the list in front of me, but probably his original total offense level I think was going to be like a 50, and it ended up at a 44. So he dropped his objections, and in exchange he got nothing as far as his sentence? No, he didn't. Well, if you were to win, what kind of sentence would you think would be appropriate? Well, I mean, if you go up to a 42, it's 360 to life. And I'm not saying 360 would be the sufficient sentence, but 360, he'd be 75 when he gets out of prison, which is still, he could have a meaningful life and be a productive citizen for a period of time. And I do think that that would serve as a deterrence and teach respect for the law. I think all of that would be consumed within a sentence such as that. I do think there are sentences that, less than life, that could have been given him that would meet the objectives of the sentencing guidelines in 3553. Thank you. Thank you. Mr. Ray? May it please the Court. Your Honors, the district court acted within its discretion in imposing a within-guidelines sentence. The government does not, would not suggest that the life sentence is not a serious and difficult sentence, I think probably for any district court to impose. But this is a defendant who, whatever, however much he had been, whether or not he had a significant criminal history that he had been caught, sentenced, et cetera for, he was importing a huge quantity of pure methamphetamine. Money in the lab reports showed 100% or more within some standard of error, obviously. He was sophisticated. He was traveling back and forth to Mexico to not only bring large sums of money, but import the methamphetamine. And he had four firearms that he was caught with. His co-defendant, Mr. Pena, told authorities that he had been given a firearm by Mr. Saldana in case he needed it and that they regularly shot off that firearm on the property. Did the jury acquit him of carrying a firearm in furtherance of the trafficking? They did. But as Your Honor is aware, whether or not a jury acquits, that does not mean that a sentencing court may not consider the evidence in support of that use and in support of a guideline calculation. Of course, the defendant doesn't challenge the guideline calculation. And I know of no decision, none, where a guideline sentence has been held substantively unreasonable. There has been no evidence presented by the defendant that this is a, that overcomes the presumption of reasonableness. The question is not what this court would impose. The question is not what I might think is reasonable. The question is did the district court abuse its discretion by imposing a sentence that the sentencing commission has judged reasonable. And I note that the quantity of methamphetamine that this defendant possessed and was held responsible for distributing was approximately 600 times the quantity that triggers a 10-year mandatory minimum sentence. This was not, this is a gentleman who for five years, even just based on the five co-conspirators that testified at trial, trafficked an enormous quantity of a very dangerous drug in approximately 6,000 dosage units. 60,000, excuse me. What can you tell me about this deal where the defendant dropped his objections to the drug attribution amounts and everything else in exchange for nothing that affected his sentence? What happened? Well, I think that, right, it reduced his guideline level from a 50 to a 44. Now, in the context of this particular sentence, I would agree with Your Honor that there doesn't appear to have been any sentencing benefit. But we all know, as we have experienced in the last, since 2007, sentencing commissions goes in and they reduce that. There is a possibility now that should the sentencing commission determine that that quantity of methamphetamine should not be punished as severely as it was in this case, and the sentencing commission makes that guideline change retroactive, which it has done three times now since 2007, then he could get the benefit of that change. So although he did not receive a benefit, as we can tell on this record, of course it did make it more likely, more possible perhaps, that Judge Voorhees would impose a sentence below life. I mean, it reduced the appearance of, he ended up with a total offense level of 44 as opposed to 50. Automatically reduced it to 43, so it did not make a difference in his guideline range. But it does make it possible, and I can attest, I've handled every one of those motions for the Western District of North Carolina. I can attest that it might benefit him in the future. But, you know, whether or not it does really isn't the question before this court in terms of the sentence imposed. It was a within guideline sentence. It was a sentence that I would respectfully suggest was appropriate, but more importantly that the district court had the discretion to determine was appropriate because of the judgments that both Congress and the sentencing commission have made about the dangerousness of this drug, about the victims that it creates, about the violence that is likely, and that was part of his guideline calculation was that he possessed a firearm during the commission of the offense. So although the district, the jury acquitted him of the 924C offense, the district judge did find that he possessed a gun in connection with this offense, and that was part of what increased his guideline offense level to 44. It would have been 42 without that. What would the guideline range have been if it were 42? I don't, I mean, I assume it would have still, you know, it would have permitted life, but I don't think it would have, I don't think that that would have been the only, probably would have been 360 to life, but I don't have my guidelines book with me. I'm sorry. You're right. I think that it would have been 360 to life with his criminal history category of one. So, you know, and he could have challenged, I don't believe he objected to that two-level bump, but many of the enhancements that he objected to we did agree, and I don't think that we agreed necessarily because those, they weren't supported. I think we just agreed that let's go into sentencing with some agreement about what the offense level should be. If your honors don't have questions, I think that on the sufficiency count, of course, we had a lot more, much direct evidence that he engaged in the conspiracy. On the procedural reasonableness of the sentence, the district court considered every argument, and the district court said essentially, look, you have scars, but there are two ways to view scars. One is maybe they would make you more susceptible, but it's just as likely that somebody might stay away from you. There is also, I would note, information in the pre-sentence report, and I think it was paragraph 19 of the pre-sentence report that suggested that the shooting in Mexico, the reason he was using a walker right before he was arrested was gang-related. Now, I don't know the circumstances of that, but it's not as if there is an absence of any suggestion that he might have been involved in gang-related activity, or he could have just been the victim of gang-related activity. Not clear. Ms. Ray, was there anything of substance to the forfeitures? How much? I don't remember, Your Honor. I'm sorry. That's okay. I was just curious. Let me think back on this. There was a truck that they seized a bunch of cash out of that I believe was, I remember reading something about it being worth $20,000. Okay. I think there was a truck forfeited. I know the firearms, of course. I assume the properties were, but I don't know. But, I mean, I have to kind of assume that the properties were, but I don't do our forfeiture, and it's not an issue, so I didn't look. Okay. That's fine. If Your Honors don't have any further questions, we respectfully request that this Court affirm Judge Voorhees' exercise of his discretion in this case to impose a life sentence. Thank you, Ms. Ray. Thank you. I hope you have some time. Coming back, and we're dealing with reasonableness, and I think Judge Davis' point is well taken, that it's easily inferred that prior to trial somebody said, look, you're between a rock and a hard place. You can go to prison for the rest of your life, or you can go to prison for 20, 30 years, and that oftentimes happens. The argument is that we can wait on the Sentencing Commission to change the sentencing laws. It took the Sentencing Commission how long? Between 1985 and 2010 before they made their first change, and that was related to crack. I don't know that there's been any evidence that the Sentencing Commission is going to move or reconsider the methamphetamine. And in the meantime, Mr. Saldana is going to be in prison. But moreover, the Sentencing Commission deals with the broad array of society as a whole. Mr. Saldana, in the guidelines and the case law, says totality of the circumstances surrounding the individualized case, and that's what we have here, an individualized case. Five years of behavior wants the rest of life in prison. This is not a robbery. It's not a serious assault. It's not a homicide. I grant you there are plenty of ills dealing with methamphetamine, but it does not rise to life without parole because that's, in essence, what the sentence Mr. Saldana got. We do deal with victims from methamphetamine, and we do from all drug trafficking. And there is a potential for violence, but it would appear based on the evidence that was presented in Mr. Saldana's case, the only person that suffered from violence in his particular case was himself, and there's no evidence that it was related to drug activity. So I would contend that although that is something that the Sentencing Commission has taken into account, and it's certainly something that the sentencing judge would look at, if you're making an individualized assessment of the totality of the circumstances in a given case, you can vary below a life without parole sentence. And I would urge the court that when you're talking about giving somebody life, maybe you ought to pay, maybe it's appropriate that a sentencing judge pay a little bit closer attention to potential mitigating factors before imposing such a sentence. Thirty years is a long time, but it's not life. Life is life, and there is no coming back from that. And this is a genuine question. Have we ever suggested in our case law that when a district court is imposed, sort of what you're saying, that if the sentence is going to be life, we ask for, in the same way that we ask for a little more detail, a little more specificity if a sentence is going to be above the guidelines range, that we also ask for that when it's a life sentence, even if that's within the guidelines range? I don't know of any case that says that. But I make that argument to the courts, because certainly in capital cases that's certainly the point. And in the life sentence, in essence, some form of capital sentence. Did the judge in this case – I just can't remember, and I don't have the transcript in front of me. Did the judge in this case say anything specifically about, look, I have considered all the defense's arguments. I have also considered whether something less than a life sentence would do. I thought about this 360-month range, and that will not do. I can – and the sentencing transcript, of course, is 70, 80 pages long, and I've read it several times. But, no, I don't remember anything in there such as that, or I've considered lesser alternatives. I think he just went through everything, and he went through the assessment, and he said the guidelines call for life, and that's the sentence I'm going to impose. So I would urge the court to look at this and remand the case for resentencing and find that life is an unreasonable sentence under the facts and circumstances as presented in this case. Thank you, Mr. Gilbert. Thank you. The panel notes that you are court appointed. We appreciate your service to the client as well as to the court. We couldn't operate without folks like you. Thank you very much. Thank you. We'll ask the clerk to adjourn the court, and we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Henry F. Floyd, Pamela A. Harris, Andre M. Davis